De Concillio v. Brownrigg.

JANUARIUS DE CONCILLIO, executor &c. of Honora Sanders,

v.

ELLEN BROWNRIGG and husband, KATIE SULLIVAN et al.,
beneficiaries under the will of Catharine Sullivan, deceased.

Complainant, as executor of A, borrowed money of B, to be used, and which
he did use, to pay the debts of A, in order to avoid the necessity of selling
lands to pay them. Without having settled his account as executor, he was
discharged by the court, subject to his duty to account, and an administrator
*cum testamento annexo* was appointed in his place. Afterwards B died testate
of a will, of which complainant was appointed executor, and, as such, he filed
his bill against the devisees of A for relief by way of a lien on the lands for
the money he had previously borrowed.—*Held*, that he was entitled as execu-
tor of B to be subrogated to his rights as executor of A to a lien upon her
lands for so much money as it should be found upon an accounting as executor
of A he had applied for that purpose.

Final hearing on the pleadings and proofs.

*Mr. William B. Gillmore*, for the complainant.

*Mr. Gilbert Collins*, for the defendants.

PITNEY, V. C.

The object of this bill is to subrogate the complainant to the
rights of certain creditors of the estate of Catharine Sullivan,
deceased, and thereby establish a lien upon the lands of which
Mrs. Sullivan died seized. The ground of the subrogation is
that the complainant's testatrix, Mrs. Sanders, in her lifetime,
loaned and advanced to the executor of Mrs. Sullivan moneys
wherewith to pay certain debts incurred by Mrs. Sullivan in her
lifetime, and for the payment of which she did not leave sufficient
personal property.

The facts, as gathered from the pleadings and proofs, are as
follows: Mrs. Sullivan died in August, 1886, testate of a will,
by which she directed, in the first place, that all her debts should

De Concillio *v.* Brownrigg.

be paid; and, in the second place, she gave, devised and bequeathed all her property to her six children, the defendants herein, share and share alike; and, in the third place, she appointed the complainant guardian of the property of her children until they should severally arrive at the age of twenty-one years;

"and I also appoint him to be my trustee under this will to hold and collect the income of said property until my youngest child shall attain the age of twenty-one years, when the property, real and personal, shall be divided equally among my children, the children of any deceased child to take the parent's share. It is my will that said guardian and trustee shall keep all taxes and water rents levied on my property paid, and that he keep the buildings insured against loss by fire, and that he keep my personal property well invested until the time for the division of the same to be made pursuant to the third paragraph of this will, and that the net income of the property, real and personal, be in the meantime expended for the equal benefit of my children in their support and education;"

and she appointed the complainant her executor. He duly proved the will, and acted as executor until some time in the year 1888, when he was discharged as executor and trustee under the will of Catharine Sullivan, subject to his duty to account, and the defendant Ellen Brownrigg was appointed administratrix with the will annexed.

No inventory was produced, nor was any adjudication had in the orphans court that the personal property was insufficient to pay the debts. The proof on that score is simply that the personal property was very small, and that the unsecured debts amounted to over $2,000.

Mrs. Honora Sanders, the complainant's testatrix, was the sister of Mrs. Sullivan and a woman of some means and without children. The six children of Mrs. Sullivan were all infants at the time of their mother's death in 1886. The estate consisted mainly of real estate, all subject to mortgages, and an uncompleted contract for the purchase of other real estate, upon which an installment was still due. In this state of affairs Doctor de Concillio applied to Mrs. Sanders for aid, and she loaned him $2,800 in cash, by virtue of a written agreement.

De Concillio *v.* Brownrigg.

· With regard to the rights of direct subrogation claimed by the complainant as executor of Mrs. Sanders, I am not clear in my mind that the case warrants it. Mrs. Sanders was an entire stranger, and had no interest in the lands subject to the statutory lien of the debts in question, and therefore it would seem that the subrogation, if it exists, must arise out of contract, the general rule being that a mere stranger can only be subrogated by virtue of some contract for that purpose made with either the creditor or the debtor. The written contract upon which the money was advanced does not mention or provide for any lien or subrogation, and amounts simply to an acknowledgment of so much money being advanced on the credit of the estate for the purpose of paying debts, and pledging the estate for that purpose. The main object of the paper seems to have been, and was proven to have been, that Doctor de Concillio should not be personally liable, and contains no provision for any mortgage or specific lien on any property to secure its repayment.

The authorities relied upon by the complainant are nearly all cases of defective mortgages or conveyances where the intention of the parties to give specific liens was clear. See, on this point, *Receiver* v. *Wortendyke, 12 C. E. Gr. 660; Coe* v. *Railroad Co., 4 Stew. Eq. 105, 136; North River Construction Company's Case, 11 Stew. Eq. 433; S. C. on appeal, 13 Stew. Eq. 340; Hampton* v. *Nicholson, 8 C. E. Gr. 423; Merselis* v. *Vreeland, 4 Halst. Ch. 575.*

I do not, however, deem it necessary to determine this point, since I think that the complainant is entitled to relief on another ground. The complainant, in his capacity of executor of the will of Mrs. Sullivan, applied, according to the proofs, the greater portion of these moneys advanced by Mrs. Sanders to the payment of his testatrix's debts, and out of that fact arises an equity to him individually to be subrogated to the rights of such creditors. *Livingston* v. *Newkirk, 3 Johns. Ch. 312, 318; Woolley* v. *Pemberton, 14 Stew. Eq. 394, 397; Dix. Subrog. 146, 147; Sheld. Subrog. § 202.* Such right on the part of the complainant personally he by his bill, in substance, declares to

have been, and still to be, held in trust for Mrs. Sanders, and by proper amendment it may be enforced in this cause.

It was not, in fact, disputed by counsel for the defendant that the complainant was entitled to relief to some extent; but he contended, and I think rightly, that such relief was conditioned upon his first accounting as executor of Mrs. Sullivan—that is to say, that the extent of his relief depends not alone upon the amount of indebtedness which he has discharged, but upon the amount which shall be found due him on that score after he has accounted for all moneys coming to his hands as such executor. And so are the authorities last above cited. And so it must be on principle.

The language of the supreme court of Mississippi, in *Woods* v. *Ridley, 27 Miss. 120, 151,* seems to me to state the true rule: "Persons dealing with the representatives of a deceased person are presumed, in law, to be fully apprised of the extent of their authority to act in behalf of the estate which they represent. Hence, in the case of an ordinary administrator, they are presumed to know that he has no authority, as such, to make new contracts which will bind the estate in his charge; such, for example, as contracts for the loan of money even upon the pretence that it is needed to pay the debts. A person, therefore, who, under such circumstances, advances money to an administrator, acquires no right, either at law or in equity, as against the estate. His equity only arises in case the money advanced has, in fact, been applied to the payment of debts for which the estate was justly and legally bound. *In such cases the creditor of the administrator will be permitted to take his place and will be subrogated to his rights.* But precedent as well as sound policy requires that it should be shown by the clearest evidence that the estate has been benefited, or, in other words, that the money has been applied beneficially and in the payment of the debts."

That case was somewhat like this in respect to the fact that there had been a succession of administrators, and the suit was by a party who had advanced money to the first administrator for the purpose of paying the debts, and brought suit against the second administrator, and was defeated because the first

administrator had not settled his accounts and shown that there was any balance due him from the estate.

Doctor de Concillio had no right to sell lands to pay debts beyond what was necessary for that purpose. And so with regard to interest accruing on the mortgages covering the premises and taxes accruing thereon after the death of Mrs. Sullivan. He could not be allowed a lien for those unless there was a deficiency of the rents to pay them.

In strictness, the remedy of the complainant as to this net sum, when ascertained, is confined to a lien on the land of Mrs. Sullivan. The counsel of the defendant stated that they preferred that it should be taken out of the shares of the defendants, in the residue of Mrs. Sanders' estate. As four of the defendants are infants, this can only be done upon proof that the lands are worth as much or more than the charge for debts paid, and that it will be for their benefit to adopt the course proposed.

As to the amount, if any shall appear upon a settlement of his account, advanced by complainant for household expenses, rents, improvements, tuition for the children, taxes and other such expenses, so far as they are authorized by the will or necessary for the support and education of the infants, the complainant will have a right, as it now seems to me, to retain such amount out of the same fund.

The complainant may amend his bill by adding the necessary allegations and making Mrs. Brownrigg a party, as administratrix with the will annexed, with an offer to come to an account of his dealings with Mrs. Sullivan's estate, and it may then be referred to a master, to inquire as to the value of the lands of which Mrs. Sullivan died seized, including the parcel which she held on a contract of purchase and the amount of the encumbrance thereon, to take and state an account of the dealings of the complainant with the estate of Mrs. Sullivan, in his capacity of executor of her will and guardian of the estate of her children, with the provision that complainant shall submit to such accounting, such account to show how much was expended by

complainant to pay debts of the decedent and how much for the other purposes above mentioned, with leave to apply for directions and reserving further equities.